IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| QUEST INTEGRITY USA, LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 14-1483-SLR |
| | ) |
| COKEBUSTERS USA INC. | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM ORDER**

At Wilmington this 7th day of April, 2017, having reviewed defendant's limited motion for reconsideration, and the papers submitted therewith;

IT IS ORDERED that said motion (D.I. 359) is granted, for the reasons that follow:

1. **Background.** On March 28, 2017, the court granted summary judgment of invalidity of all asserted claims (1, 11, 12, 13, 24, 25, 27, 28, 30, 33, and 37) of U.S. Patent No. 7,542,874, save claim 40. With respect to claim 40, the court denied summary judgment, in part, because eight pages of deposition testimony, to which defendant cited, was missing from the record. (D.I. 356 at 43 n.51) In its limited motion for reconsideration, defendant provided the missing pages 129 through 136 of the January 12, 2016 deposition of plaintiff's 30(b)(6) witness on the FTIS source code, Robert DeLorenzo ("DeLorenzo"). (*See generally* D.I. 359, ex. A)

2. **Analysis.** Defendant seeks to correct the record for what it perceives to be "inadvertent error" by the court in identifying that defendant was "(citing Civ. No. 14-1482, D.I. 222, ex. 1 at 109:21-110:11)" as the relevant cited passage in which

DeLorenzo "testified that axial encoder data was used to track location and to set data markers at bends." (D.I. 356 at 43; D.I. 359 at 2 n.2) There is no error. Defendant argues that its brief "contained three citations for the particular quote" and the court only identified part of one. Defendant cited (without signal or explanation) to 27 pages of DeLorenzo's deposition testimony (in two separate exhibits) as well as "cell 40[C]" of the claim charts. (D.I. 328 at 23) After reviewing all of these materials (some of which referenced materials not provided to the court), the court concluded that the only passage discussing the axial encoder was the one identified. Unfortunately, absent the missing eight pages of testimony, even this passage of DeLorenzo's testimony does not provide a clear answer as to whether plaintiff used axial encoder "sweeps" or "sweeps" from another sensor to measure distance during the Norco sale. While the questioning attorney and the deponent may have understood that they were talking about the axial encoder, such a conclusion is not readily apparent from the limited record provided to the court at summary judgment. The analysis that follows reflects the additional information provided by defendant.

   3. Claim 40 recites:

     A system for displaying inspection data collected from a furnace with a specified physical geometry, wherein said furnace comprises a plurality of tube segments interconnected by a plurality of bends so as to allow stacking of at least a portion of said tube segments, said system comprising:

        a storage device for storing said inspection data and sensor data collected from said furnace; and

        a computer programmed to:

            analyze said sensor data and generate a plurality of data markers based upon said analysis of said sensor data, wherein each of said data markers identifies a location of a physical feature of said furnace so as to correlate said inspection data to said physical geometry of said furnace;

        partition said inspection data at said data markers;

> generate a display of at least a portion of said partitioned inspection data arranged to represent said physical geometry of a plurality of said tube segments and enable visual detection of a problem area comprising one or more of said tube segments; and
>
> wherein said sensor data comprises a plurality of readings collected by one or more auxiliary sensors selected from the following group: an axial encoder, an accelerometer, a roll encoder, a gyroscope, an inertial navigation system, and combinations thereof.

('874 patent, 20:17-41) At summary judgment, the primary dispute between the parties was over the "analyze sensor data" limitation.[1] ('874 patent, 20:25-30; D.I. 358 at 43) Defendant deposed inventor DeLorenzo, who identified an automatic bend detection algorithm in the FTIS source code used in the Norco sale. (D.I. 294, ex. E at 66:1-5, 68:7-11, 20-24, 72:20-23, 76:3-10, and 91:4-92:9) DeLorenzo testified that the Norco data set "had 16 sensors, so a sweep of data would consist of the 16 [ultrasonic transducers] UT sensors and axial recording, another axial recording, and some other peripheral data." (*Id.* at 80:8-11) Defendant's experts explained that "data from both axial encoders and roll encoders (sensors) were used to correlate the location of data during the creation of the composite data marker." (D.I. 296 at ¶ 108) DeLorenzo corroborated the expert testimony, explaining that the data from the axial encoder was critical to establishing the location of the inspection data in relation to the bends:

> Q.   What would it be based on? You put it in your words.
>
> A.   Okay. So if you have an odometer on there and you run the furnace, the entire furnace you're going to have a total length.
>
> Q.   Right.
>
> A.   And then you look at your bend indice and you can determine where the beginning axial position is and you can substract that to find the

---

[1] Plaintiff admitted that the Norco sale anticipated limitation "[40-F]" which is the "wherein said sensor data comprises a plurality of readings collected by one or more auxiliary sensors selected from the following group: an axial encoder, an accelerometer, a roll encoder, a gyroscope, an inertial navigation system, and combinations thereof" limitation. (D.I. 296, ex. 17 at 67)

3

> relative position, so you're using the axial array with the bend indice in it to determine where that position is.

(D.I. 359, ex. A at 129:14-25)[2] The implication of the axial data is that:

> Q. And then once you have the relative position then you just look for the sweep number where the minimum wall thickness is located, right?
>
> A. Yeah, you take that sweep number, you index into the axial position array and you do the same process. So it's relative to the index, the beginning index of the bend.

(*Id.* at 130:18-23) Claim 40 requires the use of sensor (not inspection) data to generate data markers, "wherein each of said data markers identifies a location of a physical feature of said furnace so as to correlate said inspection data to said physical geometry of said furnace." ('874 patent, 20:27-30) Unrebutted testimony from DeLorenzo and defendant's experts supports defendant's contention that the Norco sale anticipates claim 40.

    4. Plaintiff's arguments in response do not create any genuine issues of material fact. Plaintiff contended that "the Norco Report[s] do[] not include any display[s] created by the use of 'sensor data' to create data markers," because the strip charts in the Norco Reports "were created purely from ultrasound data." (D.I. 306 at 15-16) Plaintiff's experts reviewed the source code and opined that "the 'Roll' sensor data array is explicitly ignored[3] by the software. . . . [and t]he 'AccelYaw,' 'AccelPch,' and 'AccelDir' sensor data array are also simply discarded by the software." (D.I. 307, ex. A at ¶ 88) Plaintiff's experts explained further in their rebuttal expert report that the "pRoll" function discards the sensor data, because it is "commented out" but otherwise present in the source code. (D.I. 307, ex. B at ¶ 95 and figure 10) None of these arguments address

---

[2] These relevant pages were absent from the record at summary judgment. Defendant has provided the missing eight pages of deposition testimony in this limited motion for reconsideration.

[3] It is not clear from the record whether "ignore" means that these sensor functions are also "commented out" as with the "pRoll" function discussed below.

4

DeLorenzo's deposition testimony and the axial encoding data.  Moreover, plaintiff's argument that "the claim does not simply require the **collection** of sensor data: it requires **use** of sensor data to create data markers" is not persuasive.  (D.I. 306 at 15 (emphasis in original))  Claim 40 recites a "system" comprising "a storage device" and "a computer programmed to" perform a series of steps.  ('874 patent, 20:17-25)  For system claims, "an accused device may be found to infringe if it is reasonably capable of satisfying the claim limitations, even though it may also be capable of noninfringing modes of operation." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010) (citation omitted).  The claims only require that the computer be programmed to analyze the sensor data to create a data marker.  Defendant has provided unrebutted evidence that the axial encoder (sensor) data was used in the Norco sale to create data markers in a manner that anticipates claim 40.  Moreover, plaintiff's experts admit that the source code used in the Norco sale included the "pRoll" function which employs sensor data to create a data marker, even though the "pRoll" function was "commented out."  Under *Finjan*, the "pRoll" function was present in the source code used in the Norco sale and, therefore, anticipates claim 40.  For these reasons, claim 40 of U.S. Patent No. 7,542,874 is invalid as anticipated by the Norco sale under § 102(b).

_____
Senior United States District Judge